UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

ERNEST J. GLENN,                                  )
                                                  )
        Plaintiff,                                )
                                                  )
VS.                                               )        No. 21-1013-JDT-cgc
                                                  )
CAPTAIN WALKER, ET AL.,                           )
                                                  )
        Defendants.                               )

ORDER TO MODIFY THE DOCKET, DISMISSING COMPLAINT,
GRANTING LEAVE TO AMEND, AND
DENYING MOTION FOR APPOINTMENT OF COUNSEL

On January 19, 2021, Plaintiff Ernest J. Glenn, who at the time was incarcerated at the

Trousdale Turner Correctional Center (TTCC)[1] in Hartsville, Tennessee, filed a *pro se* civil

complaint under 42 U.S.C. § 1983, a motion for leave to proceed *in forma pauperis*, and a motion

for appointment of counsel.  (ECF Nos. 1, 2 & 3.)  On January 21, 2021, the Court granted leave

to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation

Reform Act, 28 U.S.C. §§ 1915(a)-(b).  (ECF No. 5.)

Glenn's complaint alleges that he was strip searched, including a rectal exam, at the

Hardeman County Correctional Facility (HCCF) on March 3, 2020, in violation of his Eighth

Amendment rights against cruel and unusual punishment.  (ECF No. 1 at PageID 2-4.)  He names

these Defendants in their official and individual capacities:  (1) Captain First Name Unknown

---

[1] At the time Glenn filed his complaint, he was confined at the Hardeman County
Correctional Facility in Whiteville, Tennessee.  (ECF No. 1 at PageID 1.)

(FNU) Walker; (2) Lieutenant (Lt.) FNU Mashbarn; (3) Lt. FNU Parram; (4) Sergeant (Sgt.) FNU

Fryer; (5) Sgt. FNU Christian; (6) Sgt. FNU Carlson; (7) Lt. FNU Carter; (8) Correctional Officer

(CO) Ricky Price; (9) CO Brian Reeves; (10) CO Andrew Sharp; and (11) K9 Tuggle.[2]   (*Id*. at

PageID 1-2.)

The Clerk shall modify the docket to add Sgt. Loy and CO Gusman as Defendants.  (*See*

*id.* at PageID 2-3.)

Glenn seeks a declaratory judgment that Defendants' conduct "violated [his] rights under

the Constitution" and "a preliminary and permanent injunction ordering Price [and] Reeves to

stop."  (*Id*. at PageID 1 & 4.)

The Court is required to screen prisoner complaints and to dismiss any complaint, or any

portion thereof, if the complaint —

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be

granted, the Court applies the standards of Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*,

556 U.S. 662, 677-79 (2009) and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57

(2007).  *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010).  The Court accepts a plaintiff's

---

[2] In the caption of the complaint, Glenn lists both K9 Tuggle and C.O. Andrew Sharp as Defendants.  (ECF No. 1 at PageID 1.)  However, in the body of the complaint he refers to both "K9 Tuggle" and "K9 Sharp".  (*Id.* at PageID 3.)  It is thus unclear whether Sharp is the K9 handler and Tuggle his dog, or whether Tuggle is also a K9 handler.  However, to the extent Glenn is attempting to sue a dog, he cannot do so because a dog is not a "person" under § 1983.  *See Batts v. Huff*, No. 15-2785-JDT-tmp, 2016 WL 4386068, at *1 (W.D. Tenn. Aug. 17, 2016); *see also Dye v. Wango*, 253 F.3d 296, 300 (7th Cir. 2001) (holding that a K-9 dog is not a suable "person").

"well-pleaded" factual allegations as true and then determines whether the allegations "'plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). Conclusory allegations "are not entitled to the assumption of truth," and legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), Rule 8 nevertheless requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

Glenn filed his complaint pursuant to 42 U.S.C. § 1983, which provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

3

To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

    *Claims for Injunctive Relief*:  As stated, Glenn seeks only declaratory and injunctive relief. (ECF No. 1 at PageID 4.)  However, because he is no longer at the HCCF, those claims are moot. *See Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) (claim for declaratory or injunctive relief is rendered moot by the plaintiff's transfer to a different prison facility); *Moore v. Curtis*, 68 F. App'x 561, 562 (6th Cir. 2003) (claims for declaratory and injunctive relief against prison and prison staff moot when inmate transferred to another facility); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (same).

    *Official Capacity Claims*:  Glenn's official capacity claims are considered claims against their employer, CoreCivic.  CoreCivic is a private company that manages the HCCF, which houses inmates in the custody of the Tennessee Department of Correction (TDOC).[3]  *See*, *e.g.*, *Talley v. McKinney*, No. 20-1118, 2021 WL 1254681, at *3 n.2 (W.D. Tenn. Apr. 5, 2021).  "A private corporation that performs the traditional state function of operating a prison acts under color of state law for purposes of § 1983." *Thomas v. Coble*, 55 F. App'x 748, 748 (6th Cir. 2003) (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)).  The Sixth Circuit has applied the standards for assessing municipal liability to claims against private corporations that operate prisons or provide medical care to prisoners. *Id.* at 748-49; *Street*, 102 F.3d at 817-18; *Johnson v.*

------

    [3] *See* www.tn.gov/correction/sp/state-prison-list/hardeman-county-correctional-facility.html ("Hardeman County Correctional Facility is owned by the Hardeman County Correctional Facilities Corporation, which contracts with CoreCivic for management of the prison.").

Case 1:21-cv-01013-JDT-cgc   Document 8   Filed 09/20/21   Page 5 of 11   PageID 38

*Corr. Corp. of Am.*, 26 F. App'x 386, 388 (6th Cir. 2001); *see also Eads v. State of Tenn.*, No. 1:18-cv-00042, 2018 WL 4283030, at *9 (M.D. Tenn. Sept. 7, 2018).

CoreCivic "cannot be held liable under a theory of *respondeat superior*." *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011).  Instead, to prevail on a § 1983 claim against CoreCivic, Glenn "must show that a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of his rights.  *Id.*  However, Glenn does not allege the Defendants' actions were taken pursuant to an unconstitutional policy or custom of CoreCivic that was the "moving force" behind any violation of his constitutional rights.  He therefore does not state a claim against the Defendants in their official capacities.

*Eighth Amendment Claims for Excessive Force*:  Glenn alleges that when he returned to his cell from the HCCF's recreation yard on March 3, 2020, everything had been removed and he was told that he and his cellmate had been placed "on property restricti[on] [for] the light being messed up." (ECF No. 1 at PageID 2.)  When Defendants Christian, Carter, and Loy told Glenn that he was to be strip searched, he demanded to speak with Chief of Security Rychen.  Glenn told them he would not go into a cell "with Sgt. Christian because we wasn't on camera, I didn't know what he was going to do to me, I have a[n] assault on staff with him, and I didn't feel safe without a camera on us.  I told them that they can't strip search." (*Id.*)  Glenn was placed in a segregated cell and left there handcuffed. (*Id.*)  His repeated demand to speak with Rychen was denied. (*Id.*)

Glenn further alleges "they" (presumably Defendants Christian, Carter, and Loy) then began "beating on the door and slamming the pieflap trying to get me wired up and would not stop screaming at me." (*Id.*)  They "attempted to get the handcuffs back" but Glenn refused until he could talk to Chief of Security Rychen; the Defendants continued to scream at Glenn. (*Id.*)  After some indeterminate time, the Defendants left the area.  When they returned, they again asked Glenn

to submit to a strip search.  (*Id*. at PageID 3.)  Still handcuffed, he refused and was told "they

w[ere] going to cut my clothes off of me."  (*Id*.)  Defendants Walker, Tuggle, Sharp, Mashbarn,

Parram, Fryer, Christian, Carlson, Price, Reeves, and Carter entered the segregated cell and "used

all types of force on me while I was still in handcuffs" and allegedly fractured Glenn's wrist.  (*Id*.)

Defendants cut off Glenn's clothes "from his feet to his t-shirt" before walking him to HCCF's

medical clinic "with no cloth[es] on".  (*Id*.)  His ongoing demands in the clinic to speak with

Rychen were again rejected.  (*Id*.)  Glenn told them "I wasn't going to move until they covered

my body up.  They told me I came to medical like that and that I'm going back like that."  (*Id.*)

"Next, there was a scuf[fle] in medical.  They used force on me again."  (*Id*.)  Defendants

Sharp, Price, Gusman, and Reeves then "strapped [Glenn] facedown to a stretcher naked with

everything showing" and returned him to his cell, sliding him halfway under the bunkbed still

handcuffed.  (*Id*.)  In that position, Glenn "felt some kind of pressure on my butt."  (*Id*.)  Defendants

left the cell, leaving him handcuffed.  (*Id.*)  At that time, Glenn asked to file a PREA report,[4] and

an Assistant Warden told Defendant Fryer to help him fill out the form because Glenn cannot read

or write.  (*Id.*)  At that point, the handcuffs were removed.  (*Id*.)

At an unspecified later time, Glenn was taken to the Jackson Madison County General

Hospital in Jackson, Tennessee, where a rectal exam allegedly revealed a piece from the fingertip

of a latex glove inside Glenn's rectum.  (*Id*.)  Nurse Cassie Sane called the HCCF to ask what they

wanted her to do with that evidence.  (*Id*.)  Sane told Glenn that HCCF personnel wanted her to

give the piece of latex to Bobby Howell at the HCCF.  (*Id*.)  Because she allegedly was

uncomfortable doing so, Sane instead called TDOC and spoke to a sexual assault investigator,

Sherri Wassel, who told Sane that she would speak with Glenn.  (*Id*. at PageID 3-4.)  Wassel spoke

---

[4] Prison Rape Elimination Act, 34 U.S.C. § 30301 *et seq.*

with Glenn the next day, March 4, 2020.  (*Id.* at PageID 4.)  The complaint does not, however,

describe what they discussed.  (*Id.*)  On September 8, 2020, Investigator Aueny from TDOC

performed a "DEA swab" on Glenn.  (*Id.*)  The complaint does not describe the findings.[5]  Glenn's

grievance about these matters was denied.  (*Id.*)

The Court construes Glenn's allegations against the Defendants as a claim for excessive

force under the Eighth Amendment, which prohibits the infliction of 'cruel and unusual

punishments' on those convicted of crimes."  *See generally Wilson v. Seiter*, 501 U.S. 294, 296

(1991).  An Eighth Amendment claim consists of both objective and subjective components.

*Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson*,

501 U.S. at 298; *Brooks v. Celeste*, 39 F.3d 125, 127-28 (6th Cir. 1994).

The objective component of an Eighth Amendment claim requires the alleged deprivation

to be "sufficiently serious."  *Farmer*, 511 U.S. at 834; *Hudson*, 503 U.S. at 9 (1992); *Wilson*, 501

U.S. at 298.  The subjective component requires that the official act with the requisite intent – that

is, that he have a "sufficiently culpable state of mind."  *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S.

at 297, 302-03.

With regard to convicted prisoners' excessive force claims against prison officials, "[t]he

test for whether the use of force violates the Eighth Amendment requires a court to determine if a

defendant's conduct caused the unnecessary and wanton infliction of pain."  *Griffin v. Hardrick*,

604 F.3d 949, 953 (6th Cir. 2010) (internal quotation marks omitted).  The objective component

asks whether the conduct, in context, is sufficiently serious to offend "contemporary standards of

decency."  *Hudson*, 503 U.S. at 6, 9.  The subjective component inquires "whether force was

applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for

---

[5] It is likely Glenn means "DNA swab" rather than DEA swab.

the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986) (internal

quotation marks omitted); *see also Hudson*, 503 U.S. a t 6-7.  To satisfy the objective component,

an inmate need not prove a serious injury but the extent of the harm may be probative of whether

the force was plausibly "thought necessary" in the situation.  *Wilkins v. Gaddy*, 559 U.S. 34, 37

(2010).   The subjective prong requires consideration of the need for the use of force, the

relationship between that need and the force used, the threat reasonably perceived by the official,

and the extent of the injury.  *Hudson*, 503 U.S. at 7.

As the Supreme Court has noted, not every physical contact violates the Eighth

Amendment:

> That is not to say that every malevolent touch by a prison guard gives rise to a
> federal cause of action. "Not every push or shove, even if it may later seem
> unnecessary in the peace of a judge's chamber, violates a prisoner's constitutional
> rights." The Eighth Amendment's prohibition of "cruel and unusual" punishments
> necessarily excludes from constitutional recognition *de minimis* uses of physical
> force, provided that the use of force is not of a sort "repugnant to the conscience of
> mankind."

*Hudson*, 503 U.S. at 9-10 (internal citations omitted).

Good faith in the use of physical force for a valid penological objective will rarely, if ever,

violate the Eighth Amendment.  *Whitley*, 475 U.S. at 319-20; *Rhodes v. Chapman*, 452 U.S. 337,

346 (1981).  "Unquestionably, 'detect[ing] and deter[ring] the possession of contraband' is a

legitimate penological objective [and a]bsent proof to the contrary, we must assume that a search

of a prisoner is initiated in an effort to detect and deter contraband." *Stoudemire v. Michigan Dep't

of Corr.*, 705 F.3d 560, 572 (6th Cir. 2013) (quoting *Florence v. Bd. of Chosen Freeholders of

Cnty. of Burlington*, 566 U.S. 1510, 1515 (2012)).  "A strip search or rectal cavity search

constitutes a claim for cruel and unusual punishment if the search 'was motivated by a desire to

harass or humiliate rather than by a legitimate justification, such as the need for order and security

in prisons.'"  *Sangathit v. Lawrence*, No. 19-00860, 2019 WL 6036741, at \*4 (S.D. Ill. Nov. 14,

2019) (internal citations omitted).

Applying these principles here, Glenn insufficiently alleges an Eighth Amendment claim

for excessive force.

First, nothing in the complaint demonstrates that any Defendants used objectively

unnecessary force that offended "contemporary standard of decency".  Glenn does not specifically

describe the allegedly unconstitutional actions of any Defendant unconstitutional, whether on an

individual basis or collectively as a group.  Instead, Glenn simply asserts generally that the

Defendants "used all types of force on me." (ECF No. 1 at PageID 3.)  That bare-bones contention

alone does not satisfy the pleading standard and fails to state a claim under the Eighth

Amendment.[6]  *See Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds'

of his 'entitle[ment] to relief' requires more than labels and conclusions . . .").  The fact that

Glenn's cell had been emptied prior to the strip search for lighting manipulation, (*see* ECF No. 1

at PageID 2), could reasonably suggest he was suspected of attempting to conceal contraband.

Detection and deterrence via body cavity searches in such circumstances are legitimate penological

goals.  *Stoudemire*, 705 F.3d at 573.

Second, Glenn alleges no facts suggesting that any particular Defendant acted maliciously

or sadistically with the intent to cause harm rather than to maintain the security that is necessary

to safety at HCCF.  Nothing in his complaint suggests any wrongful motivation.  *See Phonakone*,

2019 WL 6036741 at \*4.  Though Glenn alleges he asked to file a PREA complaint, he does not

contend that any of the Defendants made threats or sexual or other derogatory comments during

---

[6] Though Glenn alleges the Defendants fractured his wrist, he provides no details about
how this actually occurred.  Moreover, he concedes he was refusing to be strip searched,
suggesting that he may have been resisting their attempts to cut off his clothing.

the strip search and body cavity exam, which might have suggested a desire to humiliate or harass him. *See id*.

For all of these reasons, Glenn fails to state an Eighth Amendment claim for excessive force, and his complaint is subject to dismissal.

*Opportunity to Amend Complaint*:   The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). In this case, the Court finds Glenn should be given the opportunity to amend his complaint.

*Conclusion*:   In conclusion, the Court DISMISSES Glenn's complaint for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A (b)(1). Leave to amend, however, is GRANTED. Glenn's motion for appointment of counsel is DENIED without prejudice to re-filing if this case is ultimately allowed to proceed.

Any amended complaint must be filed **on or before October 12, 2021**. Glenn is advised that an amended complaint will replace the original complaint and must be complete in itself without reference to the prior pleading. The amended complaint must be signed, and the text of the amended complaint must allege sufficient facts to support each claim without reference to any extraneous document. If Glenn fails to file an amended complaint within the time specified, the

10

Court will dismiss the case with prejudice in its entirety, recommend a strike pursuant to 28 U.S.C.

§ 1915(g), and enter judgment.

IT IS SO ORDERED.

        s/ **James D. Todd**
        JAMES D. TODD
        UNITED STATES DISTRICT JUDGE